LANYON ZINC CO. et al. v. BROWN et al.

(Circuit Court of Appeals, Eighth Circuit. November 10, 1902.)

No. 1,786.

1. PATENTS—CONSTRUCTION OF CLAIMS—ORE-ROASTING FURNACE.
    The Brown patent, No. 471,264, for an ore-roasting furnace, claim 1,
    which covers a furnace in which the mechanism for operating the rabbles
    for stirring and advancing the ore is placed in a supplemental chamber
    for the purpose of protecting it from the action of the heat, dust, and
    fumes, was not anticipated, nor is it limited, by the Stanley patent, No.
    61,577.

Appeal from the Circuit Court of the United States for the District of Kansas.

Albert H. Walker and John H. Atwood, for appellants.
Philip C. Dyrenforth, for appellees.

Before CALDWELL and THAYER, Circuit Judges, and HALLETT, District Judge.

HALLETT, District Judge. This case was before the court at the last term on appeal from an order made in the circuit court granting an injunction pendente lite. The history and character of the case and its dependence upon Metallic Extraction Co. v. Brown, 104 Fed. 345, 43 C. C. A. 568, is fully stated in the review of the case at that time. (C. C. A.) 115 Fed. 150. At that hearing appellants assigned error upon the ruling of this court in the Metallic Extraction Company Case sustaining claim 1 of the Brown patent, No. 471,264, and put before the court a patent issued to William C. Munroe, No. 227,818, in support of that assignment. The Munroe patent was considered at length, and found to be very different from the Brown invention. Afterwards the case was carried to final decree in the circuit court, which sustained claim 1 of the Brown patent, No. 471,264, and declared that respondents, in constructing a Ropp furnace under patent No. 532,013, had infringed upon the Brown patent. The decree was entered July 3, 1902, and this appeal was taken from it.

At this hearing, error is again assigned upon the ruling of the court upon claim 1 of the Brown patent in the Metallic Extraction Company Case. Another patent, not heretofore considered by the court, is now put before the court to show that the former ruling was not correct. This patent, No. 61,577, was issued to I. N. Stanley, January 29, 1867. Figures 1 and 2, shown upon the opposite page, exhibit the form and structure of this device. The Stanley furnace is round, and it is described with reference to Fig. 1 on the opposite page in claim 1 of the patent as follows:

"An oven B, revolving arms F, F, and upright shaft K, operated by means of gears G, G, and horizontal shaft H, or their equivalents, substantially as described."

The inventor describes the manner of putting ore into the top of the furnace through the hopper L in the figure in words following:

"The ore pulverized is placed into a hopper near the center of the furnace, and is conveyed through a tube of fire clay or other material of a refractory

Fig. 1.

Fig. 2.

nature, near the center of the oven B, and is from thence conveyed in a circular manner from the center to the circumference, where it passes through an opening, J, into a receiver for amalgamation or other treatment."

The plows or rabbles of the Brown patent, by which the ore is stirred, are in the Stanley patent called carriers, and the ore is delivered into the furnace through them. Claim 2 of the Stanley patent reads as follows:

"2. I claim the conveying the ores or other material, while being operated upon, from the central part of oven B to the circumference, and there discharging them, or from the circumference to the center as may be desired, by means of conveyers A, A, connected to arms F, F, as shown on Fig. 5, substantially as described."

How the ores would be conveyed from the center to the circumference, or in the opposite direction, is not explained in the patent, but it may be assumed that this result might be obtained through some inclination of the hearth. Provision was made for reversing the rotary movement of the rabble carrying arms so as to protract the period of

roasting, and thus prevent the discharge of the ores from the furnace prematurely. A considerable part of the patent is devoted to the subject of introducing air through the shaft K and the rabble bearing arms for the purpose of keeping them cool and supplying oxygen to the furnace. Another subject of considerable importance in the mind of the inventor is a condenser located near the furnace, into which the gases of the furnace could be driven, and thence conveyed to furnaces marked T, in Fig. 2, to be used as fuel for heating the furnace. Nowhere in the patent is any claim asserted in respect to the power for driving the rabbles. On the contrary, the inventor uses this language in respect to the driving apparatus:

"* * * and in applying the power for the operation of shaft and conveyer arms, I do not confine myself to the arrangement of shaft below, as shown by Fig. 1, as it may be more convenient in some cases to apply the power from above; nor do I confine myself to the use of gears G, G, as it may be desirable to substitute a worm and gear instead."

No further description can be necessary to show the radical difference between the Stanley and the Brown patents in respect to the subject under consideration. In the Brown patent the problem to be solved was that of withdrawing from the furnace the rabble driving apparatus to a place without the furnace in which it would be less exposed to the heat of the furnace. In the Stanley furnace no such problem occurred or could possibly arise. The scheme and plan of that furnace embraced no more than the rotary movement of the rabbles and the arms supporting them within the furnace. For this purpose the inventor resorted to the simple device of beveled gears, used from the earliest times for converting horizontal into upright movement. The shaft through which the power was applied must necessarily be in the center of the furnace, and whether the means for turning the shaft should be applied from above or below, and in one way or another way, was a matter of convenience only. And so it seems to us that the chamber under the hearth of the Stanley furnace was not an essential part of that invention, and its location under the hearth or elsewhere is a matter of no significance whatever.

When we look to the nature and quality of the Brown and Stanley furnaces, the contrast between them widens as we proceed, until it becomes apparent that no feature of either of them has any bearing upon the other. The experts who testified at the hearing were unable to say that the Stanley furnace was ever used in a practical way, or that it could be made useful as its author intended. However that may be, it is plain that, under the rotary motion of the plows or rabbles, there was no forward movement of the ore on the hearth in the course of the furnace, as in the case of the Brown device.

In the first claim of the Brown patent, the furnace to which the invention is to be applied is described as a "furnace having means for stirring and advancing the ore." Brown did not invent the means here referred to, but he utilized such means by preserving the movement of the plows or rabbles in the course of the furnace which carried the ore forward to its destination. No such result is accomplished under the Stanley patent. Counsel for appellants says in his brief:

"The appellants do not contend that the Stanley patent negatives the validity of claim 1 of the Brown patent; but they do contend that it limits

that claim to an ore-roasting furnace, having its supplemental chamber at the lateral side of the main roasting chamber."

In our judgment the Stanley patent, though senior in point of time, has no effect whatever upon the Brown invention. The argument of counsel, often renewed in this court, that the first claim of the Brown patent was too broadly construed in the Extraction Co. Case, must be passed without consideration. As between the Brown and Ropp furnaces in controversy in this suit, which were also in controversy in the Extraction Co. Case, the question of the proper construction of claim 1 of the Brown patent is not open to debate in this court.

The decree of the circuit court is affirmed.