BROWN et al. v. LANYON ZINC CO.

(Circuit Court of Appeals, Eighth Circuit. May 3, 1910.)

No. 2,800.

*(Syllabus by the Court.)*

1. APPEAL AND ERROR (§ 1097*)—SECOND APPEAL—LAW OF THE CASE.

Propositions of law once considered and decided by an appellate court in a given case are not open to reconsideration in that court upon a second appeal in the same case, and this although the first appeal was from an interlocutory decree.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4358; Dec. Dig. § 1097.*]

2. APPEAL AND ERROR (§ 1022*)—FINDINGS OF MASTER CONCURRED IN BY TRIAL COURT—REVIEW.

Findings of a master concurred in by the trial court are regarded as presumptively correct, and must be permitted to stand, unless some obvious error has intervened in the application of the law or some serious or important mistake has been made in the consideration of the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4015; Dec. Dig. § 1022.*]

8. PATENTS (§ 318*)—INFRINGEMENT—PROFITS RECOVERABLE WHEN INVENTION IS MERE IMPROVEMENT.

In an accounting for profits received by an infringer, where the infringement is not of an entire machine but only of an improved feature thereof, the recovery must be restricted to such portion of the profits derived from the entire machine as arose from the patented feature.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 572; Dec. Dig. § 318.*]

4. PATENTS (§ 318*)—INFRINGEMENT—ASCERTAINMENT OF PROFITS—STANDARD OF COMPARISON.

In ascertaining or measuring the profits recoverable upon an accounting for an infringement, the true standard of comparison is that device or appliance which was open to the defendant, and, next to the plaintiff's invention, could have been most advantageously used in the place of that invention at the time of the infringement.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 570; Dec. Dig. § 318.*

Accounting by infringer for profits, see note to Brickill v. Mayor, etc., of City of New York, 50 C. C. A. 8.]

Sanborn, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of Kansas.

Suit by Horace F. Brown and others against the Lanyon Zinc Company. Decree for defendant, and plaintiffs appeal. Affirmed.

Douglas Dyrenforth (William B. Davies and Lysander Hill, on the brief), for appellants.

John H. Atwood (C. E. Benton, on the brief), for appellee.

Before SANBORN and VAN DEVANTER, Circuit Judges, and WILLIAM H. MUNGER, District Judge.

VAN DEVANTER, Circuit Judge. This suit is grounded upon the infringement by the appellee, the defendant in the Circuit Court of claim 1 of letters patent No. 471,264, granted to Horace F. Brown, March 22, 1892, upon an application filed August 14, 1891, for an improvement in ore-roasting furnaces, the improvement consisting of a supplemental chamber, at the side of the main roasting chamber and separated therefrom by a slotted wall, with mechanism in such supplemental chamber whereby the rabbles for stirring the ore in the main chamber can be operated through the slot in the separating wall without subjecting such operating mechanism to the direct action of the heat, dust, and fumes. The nature and history of the suit are shown with such fullness in the opinions of this court given on three prior appeals (Lanyon Zinc Co. v. Brown, 53 C. C. A. 354, 115 Fed. 150; 56 C. C. A. 448, 119 Fed. 918; 64 C. C. A. 344, 129 Fed. 912) that much that otherwise would need to be stated may be omitted. See, also, Metallic Extraction Co. v. Brown, 43 C. C. A. 568, 104 Fed. 345; Id., 49 C. C. A. 147, 110 Fed. 665. In these opinions the validity of the claim in suit was sustained. Such of the defendant's furnaces as were constructed according to letters patent No. 532,013 granted to Alfred Ropp, January 1, 1895, upon an application filed February 19, 1894—that is, with the supplemental chamber located underneath, instead of at the side of, the main roasting chamber—were held to infringe that claim, the difference in construction being held to be within the range of mechanical equivalents. Such of the defendant's furnaces as were constructed according to letters patent No. 691,112, granted to Joseph P. Cappeau, January 14, 1902, upon an application filed April 20, 1901—that is, with the operating mechanism located, not in an inclosing supplemental chamber but in an open or uninclosed space underneath the main roasting chamber—were held not to infringe, because the court was of opinion that the terms of the claim in suit were such as to make a supplemental chamber for housing the rabble operating mechanism an essential element of the invention; and the Circuit Court's decree permanently enjoining the defendant from continuing its infringement and ordering an accounting in respect thereof was affirmed. The present appeal is from the final decree entered upon the accounting.

We are requested to reconsider our prior ruling that no infringement resulted from the use of the Cappeau type of furnace, with the rabble operating mechanism in an open or uninclosed space underneath the main roasting chamber, but this we may not do. That ruling turned upon the interpretation of the claim in suit and is now a part of the law of the case, whether it was right or wrong. It was adhered to after due consideration of a timely petition for a rehearing, and the Circuit Court, as in duty bound, has respected and enforced it in the subsequent proceedings. True, it was made upon an appeal from an interlocutory decree granting an injunction, but that did not render it less obligatory upon the Circuit Court, and does not except it from the settled rule that propositions once decided by an appellate court are

not open to reconsideration in that court upon a subsequent appeal or writ of error. Smith v. Vulcan Iron Works, 165 U. S. 518, 525–526, 17 Sup. Ct. 407, 41 L. Ed. 810; In re Potts, 166 U. S. 263, 267, 17 Sup. Ct. 520, 41 L. Ed. 994; United States v. California, etc., Land Co., 148 U. S. 31, 38, 13 Sup. Ct. 458, 37 L. Ed. 354; In re Sanford Fork & Tool Co., 160 U. S. 247, 255, 16 Sup. Ct. 291, 40 L. Ed. 414; Illinois v. Illinois Central R. R. Co., 184 U. S. 77, 90–93, 22 Sup. Ct. 300, 46 L. Ed. 440; Bissell Carpet Sweeper Co. v. Goshen Sweeper Co., 19 C. C. A. 25, 40, 72 Fed. 545, 560; Burns v. Cooper, 82 C. C. A. 300, 153 Fed. 148; Crotty v. Chicago Great Western Ry. Co., 95 C. C. A. 91, 169 Fed. 593; Messinger v. Anderson, 96 C. C. A. 445, 171 Fed. 785. If we were at liberty to entertain the present request, we equally would be at liberty to reconsider our ruling on the first appeal, in respect of the infringement by the use of the Ropp type of furnace, but that this may not be done was settled when the case was here on the second appeal.

Recognizing, however, that a proposition once decided is within the rule just stated only when the facts properly controlling its decision on the subsequent appeal or writ of error are substantially the same as before (Barney v. Winona, etc., R. R. Co., 117 U. S. 228, 231, 6 Sup. Ct. 654, 29 L. Ed. 858; 'Crotty v. Chicago Great Western Ry. Co., supra), we turn to another contention of the appellants, namely, that the present record, differing from the one before us at the time of the prior ruling, discloses that in the defendant's furnaces of the Cappeau type the operating mechanism is in what is virtually an inclosed supplemental chamber, and is not in an open or uninclosed space.

Subsequently to our prior ruling, and upon the complainants' application, the Circuit Court modified the order of reference to the master so as to require him, in the course of the accounting, to receive evidence as to whether or not, as was then charged by the complainants, the defendant's Cappeau furnaces were constructed with a cellar-like excavation thereunder, containing the rabble operating mechanism, and with walls of earth or masonry so surrounding the excavation as to make it substantially an inclosed supplemental chamber, and to receive evidence of the profits derived by the defendant from the use of any furnaces so constructed, and to report separately his conclusions thereon. It is upon the evidence so taken that the complainants ground their contention last stated. The master, however, reached the conclusion that the contention was not sustained by the evidence, and his conclusion was approved by the Circuit Court. Of course, these concurring findings are presumptively correct and must be permitted to stand, unless some obvious error has intervened in the application of the law, or some serious or important mistake has been made in the consideration of the evidence. Moffat v. Blake, 75 C. C. A. 265, 145 Fed. 40; Houck v. Christy, 81 C. C. A. 602, 152 Fed. 612. The record does not disclose any such error or mistake. On the contrary, it shows that the facts relating to the cellar-like excavations are these: Furnaces of another type, set well into the ground, formerly occupied the places now occupied by those of the Cappeau type, and the excavations resulted from the removal of the former. Instead of filling the excavations, supporting posts of greater height than otherwise would

have been required were placed under the Cappeau furnaces. The excavations are both longer and wider than the furnaces and the floors or hearths of the latter are above the level of the walls of the excavations and the adjacent earth, enough so to permit the rabble operating carriages beneath the furnaces to move on rails actually placed above that level. In short, the rabble operating mechanism is above the excavation and in an open or uninclosed space which permits a free movement of the air and ready access to such mechanism. It therefore must be held that the facts relating to the use of the Cappeau furnaces are substantially the same on this appeal as on the prior one and that the ruling then made is controlling.

We now come to the accounting in respect of the infringement by the use of furnaces of the Ropp type between March 6, 1899, and September 7, 1902, when the defendant was enjoined from longer using them. The chief complaint directed against the accounting, and the only one which merits particular mention, is that an erroneous standard of comparison was used in measuring the profits realized by the defendant from this infringement.

At the outset it is well to observe that the invention in suit did not cover the entire furnace of the Ropp type, as used by the defendant, but only a part of it consisting of the supplemental chamber wherein the rabble operating mechanism was housed and protected from the direct action of the heat, dust, and fumes while it actuated the rabbles in the main chamber by means of an arm extended through a slot in the intervening wall or floor, and that, although the defendant's use of this improvement was a wrongful use of the plaintiffs' property, its use of other parts of the furnace was a lawful use of its own property; that is, of what was open to use by all alike. Therefore the plaintiffs' interest in the profits derived from the use of the entire furnace was confined to such as arose from the patented feature, the supplemental chamber, and the remaining profits rightfully belonged to the defendant. This is well settled. In McCreary v. Pennsylvania Canal Co., 141 U. S. 459, 463, 12 Sup. Ct. 40, 42 (40 L. Ed. 35), it was said:

"There is no doubt of the general principle that in estimating the profits the defendant has made by the use of the plaintiff's device, where such device is a mere improvement upon what was known before, and was open to the defendant to use, the plaintiff is limited to such profits as have arisen from the use of the improvement over what the defendant might have made by the use of that or other devices without such improvements. This is a familiar doctrine announced by this court in a number of cases. Seymour v. McCormick, 16 How. 480 [14 L. Ed. 1024]; Mowry v. Whitney, 14 Wall. 620 [20 L. Ed. 860]; Littlefield v. Perry, 21 Wall. 205 [22 L. Ed. 577]; Elizabeth v. Pavement Co., 97 U. S. 126 [24 L. Ed. 1000]; Garretson v. Clark, 111 U. S. 120 [4 Sup. Ct. 291, 28 L. Ed. 371]."

In that case it was held that a device covered by an earlier patent owned by the plaintiff, but not then in suit, must be held open to the defendant in determining the profits recoverable by reason of the infringement of a later patent covering an improvement upon the subject of the prior one; in other words, that the device of the prior patent, so open to the defendant, constituted a proper standard of com-

parison in ascertaining the profits realized from the infringement of the later patent.

In Keystone Manufacturing Co. v. Adams, 151 U. S. 139, 146, 14 Sup. Ct. 295, 298 (38 L. Ed. 103), it also was said:

"While it is undoubtedly established law that complainants in patent cases may give evidence tending to show the profits realized by defendants from use of the patented devices, and thus enable the courts to assess the amounts which the complainants are entitled to recover, yet it is also true that great difficulty has always been found, in the adjudicated cases, in applying the rule that the profits of the defendant afford a standard whereby to estimate the amount which the plaintiff is entitled to recover, and in defining the extent and limitations to which this rule is admittedly subject.

"Such a measure of damages is of comparatively easy application where the entire machine used or sold is the result of the plaintiff's invention; but when, as in the present case, the patented invention is but one feature in a machine embracing other devices that contribute to the profits made by the defendant, serious difficulties arise.

"It is unnecessary, in this opinion, to review the numerous cases, some at law, others in equity, wherein this court has considered various aspects of this question. It is sufficient to say that the conclusions reached may be briefly stated as follows: It is competent for a complainant, who has established the validity of his patent and proved an infringement, to demand, in equity, an account of the profits actually realized by the defendant from his use of the patented device; that the burden of proof is on the plaintiff; that where the infringed device was a portion only of defendant's machine, which embraced inventions covered by patents other than that for the infringement of which the suit was brought, in the absence of proof to show how much of that profit was due to such other patents, and how much was a manufacturer's profit, the complainant is entitled to nominal damages only. Seymour v. McCormick, 16 How. 480 [14 L. Ed. 1024]; Rubber Co. v. Goodyear, 9 Wall. 788 [19 L. Ed. 566]; Mowry v. Whitney, 14 Wall. 620; Elizabeth v. Pavement Co., 97 U. S. 126 [24 L. Ed. 1000]."

And to the same effect are Warren v. Keep, 155 U. S. 265, 268, 15 Sup. Ct. 83, 39 L. Ed. 144; Lattimore v. Hardsocg Mfg. Co., 58 C. C. A. 287, 121 Fed. 986; Brickill v. Mayor, 50 C. C. A. 1, 112 Fed. 65.

As before indicated, the plaintiffs' patented supplemental chamber was not in itself an operative ore roasting furnace, but only an improved feature of one, and was not capable of beneficial use, save as a feature of that type of ore-roasting furnaces in which the ore was stirred by mechanically operated rabbles. Furnaces of that type were not unknown when this supplemental chamber was invented, but, on the contrary, were well known and in use, as is attested by the following extract from the testimony of one of the plaintiffs' principal witnesses:

"The invention forming the subject-matter of the patent related to improvements in ore-roasting furnaces of that class in which the ore, during the process of roasting, was continuously agitated and moved from end to end of the roasting hearth, by means of transverse rabbles actuated by endless chains passing over, and supported by, suitable operating wheels or drums; furnaces of this type being well known at the date of the invention in question, as is shown by four patents in the prior art."

Recognition of this is also found in the specification in the plaintiffs' letters patent where it is said:

"A serious objection to many of the furnaces of the type herein shown has been that the chains and their attachments were drawn through the center of the furnaces, and were thereby exposed to the destroying action of the

heat, dust, and fumes from the ore, and consequently these parts were soon destroyed. A second objection arose from the fact that the plows or stirrers traveled against the floor of the compartment, which, being usually made of brick, would not only soon be cut in channels and worn out, but the plows or stirrers themselves would also quickly be worn away. The essential part of my invention lies in constructing the furnaces so that these objectionable features are avoided, and the moving or carrying parts protected from the direct action of the heat, fumes, and dust."

The defendant's infringing furnaces, called the Ropp furnaces, were of this well-known mechanically rabbled type, but with the added feature of the patented supplemental chamber, which augmented the profits realized from their use. Hand-rabbled furnaces, of the type commonly used before the mechanically rabbled ones became known, were also used by the defendant, but no particular significance attaches to this, because, as stated by the master, these hand-rabbled furnaces were not constructed by the defendant, but were part of a plant purchased by it and were used in roasting inferior grades of ore, which constituted only a small portion of the ores treated by the defendant.

In substance, the master found that furnaces of the mechanically rabbled type, but without the supplemental chamber, had been employed successfully in roasting copper and other ores prior to the date of this invention, and to such an extent as to indicate that it was entirely practical to use them in roasting zinc ores, the kind treated by the defendant; that the supplemental chamber, although concededly advantageous, was not essential to the successful use of such furnaces; that hand-rabbled furnaces were not the only or the best type of furnace open to the defendant at the time of the infringement; and that the mechanically rabbled type, without the supplemental chamber, was then open and capable of a more advantageous use. Giving effect to these findings, the master rejected the hand-rabbled furnace as a standard of comparison, adopted the mechanically rabbled furnace without the patented supplemental chamber, and computed the profits recoverable by the plaintiffs accordingly. His action in so doing and the accuracy of his findings in that connection were challenged by exceptions to his report, but after a full hearing the Circuit Court overruled the exceptions and sustained the report, as is disclosed in a well-considered opinion set forth in the record.

It now is urged that the evidence, rightly considered, shows that the hand-rabbled furnace should have been adopted as a standard of comparison, but a patient examination of the evidence satisfies us that the master's findings, concurred in by the Circuit Court, as they were, ought not to be disturbed. We do not find that there was any serious or important mistake in considering the evidence, and we think the rule of law applied by the master was right, namely: The true standard of comparison in any given case is that device or appliance which was open to the defendant, and, next to the plaintiffs' invention, could have been most advantageously used in the place of that invention at the time of the infringement.

The decree must be affirmed, and it is so ordered.

SANBORN, Circuit Judge (dissenting). For the following reasons I am unable to concur in the result in this case: The end sought

by the use of the infringing device was the roasting of zinc blende by a mechanically rabbled furnace. The measure of complainants' right of recovery was the pecuniary advantage the defendant derived from the use of Brown's invention above that which the defendant would have derived from the use during the infringement of any other known machine open to the public that was not experimentally, but was actually in use and was effective to roast zinc blende by a mechanically rabbled furnace. Walker on Patents, §§ 724, 734; the authorities cited in the opinion of the majority; Mowry v. Whitney, 14 Wall. 651, 20 L. Ed. 860; Knox v. Great Western Quick Silver Mining Co., 14 Fed. Cas. 809, 812 (No. 7,907). The evidence in the case has convinced me that, while mechanically rabbled furnaces without Brown's improvement had been used to roast copper ore, none of them at the time of the infringement had been used successfully to roast zinc blende, a process which required a higher degree of heat, and that the hand-rabbled furnaces were the only ones then known that were open to the public and effective to accomplish this purpose by the use of the rabbles. This view of the evidence has forced my mind to the conclusion that there is an error in the accounting because the master did not take the hand-rabbled furnaces which the defendant was itself using by the side of the infringing furnaces as the standard of comparison.

Moreover, the evidence seems to me to prove that the entire efficiency of the mechanically rabbled furnaces during the infringement was the product of Brown's invention, that without that invention they would have been inefficient and less useful than the hand-rabbled furnaces, would have been discarded, and the hand-rabbled furnaces would have been installed in their places. My conviction that the evidence establishes this fact has led my mind to the conclusion that the accounting in this case should have been governed, not by the rule applicable to slight improvements in machines which were operative and efficient to accomplish the desired result before as well as after the improvement, as in Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371; Keystone Manufacturing Co. v. Adams, 151 U. S. 139, 14 Sup. Ct. 295, 38 L. Ed. 103; Seymour v. McCormick, 16 How. 480, 14 L. Ed. 1024; Robertson v. Blake, 94 U. S. 728, 24 L. Ed. 245, and cases of that character, but by the rule that, where the complainant's patent, secures a new combination or a new machine which accomplishes a result never attained before it was invented, the entire profits derived from the infringing device are recoverable and the defendant holds them as a trustee de son tort for the patentee or his assigns, and the burden is on the defendant to account for them as in Crosby Steam Valve Co. v. Safety Valve Co., 141 U. S. 441, 448, 449, 454, 12 Sup. Ct. 49, 35 L. Ed. 809; Brennan & Co. v. Dowagiac Mfg. Co., 162 Fed. 472, 475, 89 C. C. A. 392, 395; Dowagiac Mfg. Co. v. Superior Drill Co., 162 Fed. 479, 481, 89 C. C. A. 399; Elizabeth v. Pavement Company, 97 U. S. 126, 24 L. Ed. 1000; Manufacturing Co. v. Cowing, 105 U. S. 253, 26 L. Ed. 987; Hurlbut v. Schillinger, 130 U. S. 456, 9 Sup. Ct. 584, 32 L. Ed. 1011; Warren v. Keep, 155 U. S. 265, 15 Sup. Ct. 83, 39 L. Ed. 144; Ruggles v. Eddy, 20 Fed. Cas. 1316 (No. 12,116); Zane v. Peck (C. C.) 13 Fed. 475; Fifield v.

Whittemore (C. C.) 33 Fed. 835; Creamer v. Bowers (C. C.) 35 Fed. 206; Orr & Lockett Hdwe. Co. v. Murray, 163 Fed. 54, 56, 89 C. C. A. 492. The view of the law applicable to cases of accounting for infringement and some of the authorities may be found in my dissenting opinion in Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co., 173 Fed. 373–378, 97 C. C. A. 621.