CONROY et al. v. PENN ELECTRICAL & MFG. CO.

PENN ELECTRICAL & MFG. CO. v. CONROY et al.

(Circuit Court of Appeals, Third Circuit. October 11, 1912.)

Nos. 43, 44, March Term, 1912.

1. PATENTS (§ 318*)—INFRINGEMENT—DAMAGES—PROFITS.

In general, a patentee, on a decree for an accounting against an infringer, can only recover profits shown to be due to the inventor's patented contribution to the art, and not to the whole profits made on the manufacture and sale of the article to which he has only contributed an improvement; but this rule does not apply to a case where the invention does not consist of a mere improvement on, attachment to, or modification of a prior device of some particular character, but constitutes a new and complete type of article, constituting a single unitary and complete structure, no one of the parts or elements of which could be omitted and a useful and operative device remain, in which case the infringer is liable to account for the whole profits made from the manufacture and sale of the infringing article.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*]

2. PATENTS (§ 318*)—INFRINGEMENT—ACCOUNTING.

On an accounting of profits for the infringement of a patent on a particular style of toilet mirror, defendant was not entitled to credit for an alleged saving in manufacture by the use of certain patented machines in chipping the edges of the glass plates, where it appeared that, prior to the patenting of such machines, chipping machines for the same purpose were in use by claimant; there being no showing that any saving was effected by defendant over the cost to complainant by defendant's use of such patented machines.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*

Accounting by infringer for profits, see note to Buckhill v. Mayor, etc., of City of New York, 50 C. C. A. 8.]

3. PATENTS (§ 318*)—INFRINGEMENT—PROFITS—ACCOUNTING.

On an accounting of profits for the infringement of a patent, the infringer is not entitled to credit for profits due to an alleged saving, because of superior skill and intelligence, over the cost to complainant of producing the patented article.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*]

4. PATENTS (§ 318*)—INFRINGEMENT—PROFITS—ACCOUNTING—EVIDENCE.

On an accounting of profits for the infringement of complainant's patent on toilet mirrors, evidence of the cost to others of silvering mirrors was inadmissible, except for comparison in testing defendant's claims for credit of the cost of manufacture; the question being the actual cost to defendant.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*]

Bradford, District Judge, dissenting.

Cross-Appeals from the District Court of the United States for the Western District of Pennsylvania.

Suit by the Penn Electrical & Manufacturing Company against John M. Conroy and others. From a decree assessing damages in a suit for patent infringement, both parties appeal. Affirmed.

Edward Rector, of Chicago, Ill., and Joseph M. Nesbit, of Pittsburgh, Pa., for plaintiff.

Paul Synnestvedt, of Pittsburgh, Pa. (J. C. Bradley, of Pittsburgh, Pa., and Raymond Pitcairn, of Philadelphia, Pa., of counsel), for defendants.

Before GRAY, Circuit Judge, and BRADFORD and WITMER, District Judges.

WITMER, District Judge. This case brings before the court appeals by both parties from a final decree of the Circuit Court awarding the complainant, the Penn Electrical & Manufacturing Company, the sum of $4,970.50, with interest and costs, in an accounting against the defendants, John M. Conroy, Edwin N. Prugh, and Mildred W. Prugh, copartners trading and doing business as Conroy, Prugh & Co., for infringement of letters patent No. 631,-033, granted to complainant August 15, 1899, for new style of toilet mirrors. The accounting was had under a decree finding the patent valid and infringed, which was afterwards affirmed by this court. 146 Fed. 749, 77 C. C. A. 239.

[1] The first five of defendants' assignments of error, which aim at the fundamental right of the complainant to any recovery whatsoever on account of profits received by them from the manufacture and sale of the infringing mirrors, raise the question of primary importance. It is urged by the Conroy Company that the patent consisted solely and only in producing a new mirror mounting or easel; that it was construed by the court, and was so intended, as an improvement; and that therefore, for the purpose of an accounting, the court will look only at the actual contribution of the inventor to the art. Undoubtedly, the cases in the Supreme and federal courts, on the circumstances before them, in some measure, support the general proposition that a patentee, upon the decree for an account against an infringer, can only recover the profits shown to be due to the inventor's patented contribution to the art, and that he is not entitled to the whole profits made upon the manufacture and sale of the article to which he has only contributed an improvement.

The leading case of Seymour v. McCormick, 16 How. 480, 490, 14 L. Ed. 1024, to which reference is made, however, we think illustrates the position that each case must be decided upon the showing made by its special circumstances. In the case mentioned McCormick obtained a patent for a reaping machine. This patent expired in 1848. In 1845 he obtained a patent for an improvement upon his patented machine, and in 1847 another patent for new and useful improvements in the reaping machine. The principal one of these last was in giving to the raker of the grain a convenient seat upon the machine. The court decided, in a suit for violation of this patent of 1847, that it was erroneous in the Circuit Court to say that the defendant was responsible in damages to the same extent as if he had pirated the whole machine. Clearly it would have been unfair, and even absurd, to give the profits of the whole

machine to the patentee of a convenient seat on the machine, allowing the raker of the grain to ride, instead of walking as before. Judge Grier, in delivering the opinion of the Supreme Court in this case, said:

"It must be apparent to the most superficial observer of the immense variety of patents issued every day that there cannot, in the nature of things, be any one rule of damages which would equally apply to all cases. The mode of ascertaining actual damages must necessarily depend on the peculiar nature of the monopoly granted."

It is idle, therefore, to say that any hard and fast rule can be made applicable to all cases where profits are to be accounted for. The court and the accounting officer will consider each case in the light of its own peculiar characteristics, and deal with it practically and in a common-sense manner. Upon examination, it appears self-evident, from the very nature of the patented invention, that it does not consist of any mere improvement upon, attachment to, or modification of a prior device of some special character, but that, on the contrary, it constitutes a new and complete type of article of manufacture, comprising and composed of a combination of certain described elements, constituting a single unitary and complete structure, no one of whose parts or elements could possibly be omitted or withdrawn and a useful and operative device remain.

The patent, drawings, and exhibits disclose a hand mirror of peculiar structure. Different forms and mountings of such mirrors existed prior to the patent in suit, it is true. Hand mirrors have antedated even the invention of glass, and are as old as human vanity; but this particular structural design, form, and arrangement of parts, constituting the subject of the patent in suit, is a unitary novelty. It differs from every other hand mirror. It has an adjustable easel, and can be converted into a hand mirror, from which no part of the device patented could be removed and leave a salable structure. In this respect the case at bar is clearly distinguished from Seymour v. McCormick, Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371, and kindred cases presented by plaintiffs in error.

The patent is very analogous in its essential nature to a design patent; not a design superimposed upon some other creation of art, but a design of form and shape, such as the design of a particular form of vase, as distinguished from a design painted upon a vase. The infringer made his whole profits from adopting this particular form of hand mirror, and for these he is bound to account to the complainant. As was said by Justice Shiras, delivering the opinion of the court in Warren v. Keep, 155 U. S. 268, 15 Sup. Ct. 84, 39 L. Ed. 144:

"Where the patented invention is for a new article of manufacture, which is sold separately, the patentee is entitled to damages arising from the manufacture and sale of the entire article." Manufacturing Co. v. Cowing, 105 U. S. 253, 26 L. Ed. 987; Hurlbut v. Schillinger, 130 U. S. 456, 9 Sup. Ct. 584, 32 L. Ed. 1011; Crosby Valve Co. v. Safety Valve Co., 141 U. S. 441, 12 Sup. Ct. 49, 35 L. Ed. 809.

To the same effect is the dictum of Judge Grosscup in Orr & Lockett Hardware Co. v. Murray, 163 Fed. 54, 89 C. C. A. 492, following the rule stated by Justice Bradley in Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000, wherein he said:

"Where profits are made by an infringer, by the use of an article patented as an entirety, the infringer is responsible to its patentee for the whole of such profits, unless he can show, and the burden is on him, that a portion of such profits is the result of some other thing used by him."

Cases might be multiplied holding to this effect, among them being National Metal Strip v. Bredin et al., 186 Fed. 490, 108 C. C. A. 468; Maimin v. Union Special Machine Co., 187 Fed. 123, 109 C. C. A. 41; Regina Music Box Co. v. Otto & Sons (C. C.) 114 Fed. 507, decided by this court. There is no doubt as to such being the rule, nor is there any controversy as to its propriety. The test lies in its application to the facts warranting the same, as heretofore noted.

[2] Another of the assignments of the plaintiff in error questions the rejection of $1,517.86 claimed for an alleged saving, on their part, in the manufacture of the infringing mirrors by reason of their use of certain patented machines in chipping the edges of the glass plates of the mirrors. A further credit for use of these machines formerly claimed for royalties due Mr. Conroy, owner of the patent and member of the firm, has been abandoned. The claim is based upon the assumption that if defendants, plaintiffs in error, had not chipped their mirror plates upon the Conroy machines, they would have been obliged to chip them by hand. It appears that the defendants had used chipping machines prior to the Conroy patent, which were also in use by the complainant. Conroy v. Penn Electrical Mfg. Co., 159 Fed. 943, 87 C. C. A. 149; Id., 185 Fed. 511. And there is no showing that any saving was effected over these by use of the Conroy patented machines. The machine used by the complainant might have accomplished the purpose as economically, had they not been deprived of the opportunity; hence there could have been no saving. Again, there is no better reason why anything should be allowed for savings due to the use of the machines in question than there would be for allowing credit for savings effected by the use of any other superior facilities for carrying on their business. As argued by counsel, defendants might as well claim that they had more skilled workmen than other manufacturers, or more experienced and efficient managers, or more reputation and prestige in the trade, which enabled them to secure higher prices for their goods. Many such dangerous, vague, and speculative reasons might be advanced in these accountings, were the opportunity afforded.

[3] It is well settled that, if a defendant has made no profits from his use of the patented invention, none can be recovered. The rule is that the complainants shall recover the actual profits derived by the infringer from the use of the patented invention; no more, no less.

"An infringer cannot be heard to say that his superior skill and intelligence enabled him to realize profits by his infringement which a person of less skill might not have realized. He is liable for all profits he has made by the illegal appropriation of another's invention. The patentee cannot recover more than actual profits because the exercise of skill would have enabled the infringer to realize better results, nor can the latter avoid paying actual profits on the ground that they would have been less, had he not been skillful." Lawther v. Hamilton (C. C.) 64 Fed. 221.

[4] The complainant in its cross-appeal assigns for error the allowance to defendant of 10 cents per square foot to silver the plates of the infringed mirrors. Evidence was introduced showing the cost of silvering mirrors in the experience of others, by which we are to infer the credit to be allowed defendants for the work. It is immaterial, as was heretofore shown, what it may have cost others for silvering glass, excepting possibly for comparison in testing the claims of defendant; the sole question being what it actually cost the defendants.

The master's careful consideration of the testimony, his findings and conclusions, having heard the witnesses and observed their manner, comes here affirmed by the court below, and on review we are not convinced that error has been committed.

Having considered the remaining assignments, we have concluded to pass them without special reference.

The decree of the court below is affirmed.

BRADFORD, District Judge, dissents.